IN THE UNITED STATES BANKRUPTCY COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: | Bankruptcy Nos. 03-29029 MBM |
| | 03-29402 MBM |
| AIR NAIL COMPANY, INC., | 03-29405 MBM |
| INTERNATIONAL STAPLE AND MACHINE | 03-29399 MBM |
| COMPANY, ISM INVESTMENTS, INC., and | |
| CONTAINER STAPLING COMPANY, | Jointly Administered at: |
| | 03-29029 MBM |
| Debtors. | |
| | Chapter 11 |
| | |
| | Related Docket No. 995 |
| | |
| | Docket No. _____ |

## ORDER CONFIRMING JOINT PLAN OF REORGANIZATION DATED DECEMBER 10, 2004 FOR AIR NAIL COMPANY, INC., INTERNATIONAL STAPLE AND MACHINE COMPANY, CONTAINER STAPLING COMPANY and ISM INVESTMENTS, INC.

This matter came before the Court upon consideration of the Joint Plan of Reorganization dated December 10, 2004, for Air Nail Company, Inc., International Staple and Machine Company, Container Stapling Company and ISM Investments, Inc. (the "Plan").[1] The Court, having received statements of counsel, and having considered the entire record before it in this case, including the Disclosure Statement in Support of the Joint Plan of Reorganization dated December 10, 2004, as amended on January 13, 2005, for Air Nail Company, Inc., International Staple and Machine Company, Container Stapling Company and ISM Investments, Inc. (the "Disclosure Statement") and all documents submitted in support of confirmation of the Plan, after due deliberation and sufficient cause appearing therefore, makes the following findings of fact and conclusions of law.

---

[1] All Capitalized terms in this Order not defined in this Order shall have the meanings defined in the Plan.

A. The Court has jurisdiction over these cases pursuant to 28 U.S.C. §§157 and 1334. Venue is proper in this District pursuant to 28 U.S.C. §§1408 and 1409. This is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

B. Air Nail Company, Inc. ("Air Nail"), International Staple and Machine Company ("ISM"), Container Stapling Company ("Container") and ISM Investments, Inc. ("ISM Investments" together with Air Nail, ISM and Container the "Debtors") filed their original Plan and Disclosure Statement, including the exhibits thereto, with this Court on December 10, 2004, and filed their amended Disclosure Statement on January 13, 2005.

C. This Court held a hearing on January 13, 2005, on notice to the Official Committee of Unsecured Creditors (the "Creditors' Committee"), and all creditors, shareholders, and other parties in interest, to consider approval of the Disclosure Statement.

D. On January 13, 2005, this Court approved the Disclosure Statement as containing adequate information to enable a hypothetical reasonable investor, typical of holders of Claims against or Interest in the Debtors, to make an informed judgment about the Plan.

E. Following approval of the Disclosure Statement, the Creditors' Committee provided the Debtors with a letter to the Committees' constituents recommending approval of the Plan (the "Creditors' Committee Letter").

F. On January 21, 2005, the Debtors sent solicitation packages, including the Plan, the Disclosure Statement, the Order approving the Disclosure Statement, and various related materials (consisting of, where appropriate, the Creditors' Committee Letter, and/or Ballots) to all known holders of Claims against or Interests in the Debtors.

G. Timely and proper notice of the Confirmation Hearing and the time fixed for filing objections to and ballots on the Plan was given to all Creditors and Interest Holders of the

Debtors, together with all parties in interest, in accordance with the Bankruptcy Code and the Orders of this Court. Such notice was adequate and sufficient to notify all such Creditors, Interest Holders, and parties in interest of the Confirmation Hearing and the objection and voting deadlines as to the Plan, and such notice complied in all respects with the procedural Orders of this Court, the Bankruptcy Code, the Federal Rules of Bankruptcy Procedure, including, without limitation, Bankruptcy Rules 2002, 3018, 3019, and 9006, and the Local Rules of this Court, and otherwise satisfied the requirements of due process.

H. Classes 1, 3, and 4 are not impaired under the Plan and are conclusively presumed to have accepted the Plan pursuant to Section 1126(f) of the Bankruptcy Code; accordingly, they were not entitled to vote to accept or reject the Plan.

I. Class 6 receives nothing under the Plan and are conclusively deemed to have rejected the Plan pursuant to §1126(g) of the Bankruptcy Code; accordingly, they were not entitled to vote to accept or reject the Plan.

J. Classes 2 and 5 are impaired under the Plan, and Creditors in Classes 2 and 5 were therefore entitled to vote on the Plan.

K. Ballots accepting the Plan have been timely received representing more than two-thirds (2/3) in dollar amount and more than one-half (1/2) in number of the holders of Claims in classes 2 and 5, which voted on the Plan.

L. An Objection to confirmation of the Plan was filed by Alameda Produce Market, Inc. ("Alameda") (the "Objection").

M. On February 24, 2005, this Court held a hearing to consider confirmation of the Plan and other matters relating to confirmation (the "Confirmation Hearing), at which time the Court considered the Objection.

N. The Plan complies with the applicable provisions of the Bankruptcy Code including, without limitations, §§1122, 1123, and 1129 of the Bankruptcy Code.

O. The Debtors have solicited acceptance of the Plan in good faith and in compliance with the applicable provisions of Chapter 11 of the Bankruptcy Code.

P. The Plan has been proposed in good faith and not by any means forbidden by law.

Q. At least one class of claims that is impaired under the Plan has accepted the Plan, not including acceptance of the Plan by any insiders.

R. The Plan provides for the Reorganization of Air Nail and Merged ISM, the merging of ISM Investments into ISM and the liquidation of Container, and confirmation of the Plan is not likely to be followed by any liquidation or the need for further financial reorganization of the Debtors, except as provided in the Plan.

S. The Plan does not discriminate unfairly, and is fair and equitable, with respect to each class of Claims or Interests that is impaired under, and has not accepted, the Plan.

NOW, THEREFORE, it is hereby ORDERED, ADJUDGED and DECREED as follows:

1. The Plan is hereby confirmed and approved in all respects, except as provided in this Order. The Objection to the Plan is either mooted by the provisions of this Order or are hereby overruled for the reasons stated in the record at the Confirmation Hearing.

2. The Debtors are hereby authorized and empowered to implement the Plan in accordance with its terms including, without limitation, to enter into, execute, deliver, and/or implement the agreements and instruments contemplated in the Plan (including, without limitation, each of the Plan Documents).

3. As of the Effective Date of the Plan, and for purposes of distribution under the Plan, the Estates of the Debtors shall be substantively consolidated. Also on the Effective Date, all Interests in the Debtors shall be canceled.

4. On the Effective Date, the transfers of assets by the Debtors contemplated by the Plan and the vesting of the Debtors' assets by the Reorganized Debtors (i) are or will be legal, valid, and effective, (ii) vest or will vest in the transferee good title to such property free and clear of all Claims, Interests, and Liens, except those provided for in the Plan or this Confirmation Order, (iii) do not or will not constitute fraudulent conveyances or transfers under any applicable law, and (iv) do not and will not subject the Debtors, ISM Acquisition, the Reorganized Debtors, and/or property so transferred or vested to any liability by reason of such transfer or vesting under applicable law or any theory of law including, without limitation, any theory of successor or transferee liability; provided that the vesting of the Debtors' assets pursuant to section 16.2 of the Plan shall be subject to the rights, claims and interests of Alameda

asserted in the adversary proceeding commenced against Air Nail which is captioned *Alameda Produce Market, Inc. v. Air Nail Company, Inc. and Bruce and Martin Massman*, Adversary Proceeding No. 03-3203 (the "Adversary Proceeding").

5. Pursuant to §1146(c) of the Bankruptcy Code, any and all transfers of property made pursuant to or in connection with the Plan, including the sale of the Bonnie Drive Property and Container's assets pursuant to the Plan, shall not be taxed under any law imposing a stamp or similar tax.

6. Except as otherwise set forth in the Plan or this Order, any and all executory contracts and unexpired leases that were not assumed by a motion filed by the Debtors prior to the date of this Confirmation Order are hereby deemed rejected, effective immediately.

7. This Court shall retain jurisdiction as set forth in Article XIV of the Plan. The Court's retention of jurisdiction shall not, and does not, affect the finality of this Confirmation Order.

8. All Creditors and Interest Holders of the Debtors whose Claims and Interests are treated under the Plan and this Order are each permanently restrained and enjoined by instituting or continuing any action or employing any process to collect such debts or to pursue such interests as liabilities or obligations of the Debtors, except as otherwise specifically provided by this Order or the Plan; provided that the release, injunction and discharge provisions set forth in the Plan, including, without limitation, in Sections 12.2, 12.4, 16.5 and 16.6 of the Plan shall be subject to the rights, claims and interests of Alameda asserted in the Adversary Proceeding.

9. Article XV of the Plan shall be amended as follows:

### 15.1 Conditions Precedent to Plan Confirmation

It shall be a condition precedent to the confirmation of the Plan that on or prior to the Confirmation Date, the Bankruptcy Court shall have entered one or more orders which shall be, in full force and effect, and not stayed and which shall:

15.1.1 Decree that the Plan and the Confirmation Order shall supersede any Bankruptcy Court orders issued prior to the Effective Date that are inconsistent therewith.

15.1.2 Authorize the implementation of the Plan in accordance with its terms, including, without limitation, the execution and delivery of

the agreements and instruments entered into pursuant to the Plan (including, without limitation, each of the Plan Documents);

15.1.3 Issue the injunctions and authorize the issuance of the releases and exculpations as set forth in the Plan, effective as of the Effective Date;

15.1.4 Decree that, on the Effective Date, the vesting of assets by the Reorganized Debtors contemplated by the Plan (i) are or will be legal, valid, and effective, (ii) vest or will vest in the transferee good title to such property free and clear of all Claims, Interests, and liens, except those provided for in the Plan or the Confirmation Order, (iii) do not or will not constitute fraudulent conveyances under any applicable law and (iv) do not and will not subject the Debtors, the Reorganized Debtors, or property so vested to any liability by reason of such vesting under applicable law or any theory of law including, without limitation, any theory of successor or transferee liability; provided that the release, injunction and discharge provisions set forth in the Plan, including, without limitation, in Sections 12.2, 12.4, 16.5 and 16.6 of the Plan shall be subject to the rights, claims and interests of Alameda asserted in the Adversary Proceeding.

### 15.2 Conditions Precedent to Plan Effective Date

It shall be a condition precedent to the effectiveness of the Plan that: (1) the orders and conditions referred to in Section 15.1 of the Plan will have been entered and/or met and that any order referred to in Section 15.1, including, without limitation, the Confirmation Order; (2) all agreements and instruments contemplated by, or to be entered into pursuant to, the Plan and its provisions, and each of the other Plan Documents necessary for effectuation of the Plan, shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived; and (3) ISM Acquisition, the Reorganized Debtors and Container shall have closed and secured the Plan Funding of $18,700,000.

10. Notwithstanding any Plan provisions to the contrary, the Container Trust will not be established and the Container Trust Agreement will not be executed. Under the Senior Financing, PNC will receive a guarantee from Container collateralized by the assets of Container. As such PNC will receive the proceeds from the sale of the Container assets when those assets are sold.

11. The definition of Plan Funding under Article I of the Plan shall be amended as follows:

> 1.1.58 "Plan Funding" means the $18,700,000 in capital being facilitated by the ISM Acquisition consisting of: (i) $16,200,000 in Senior Financing (a revolving credit facility of up to $8,700,000 in borrowings (subject to a borrowing base) and a term loan of $7,500,000) with PNC as the lender under which the ISM Acquisition and the Reorganized Debtors will be co-borrowers and under which PNC will receive a first position lien on substantially all the assets of the ISM Acquisition, the Reorganized Debtors, subject only to the liens being granted under this Plan; and (ii) $2,500,000 in subordinated financing and equity contributions.

12. The definition of Senior Financing under Article I of the Plan shall be amended as follows:

> 1.1.72 "Senior Financing" means the $16,200,000 (a revolving credit facility of up to $8,700,000 in borrowings (subject to a borrowing base) and a term loan of $7,500,000) with PNC as the lender under which the ISM Acquisition and the Reorganized Debtors will be co-borrowers and under which PNC will receive a first position lien on substantially all the assets of the ISM Acquisition, the Reorganized Debtors, subject only to the liens being granted under this Plan.

13. The approved professional fees and expenses of McDonald Hopkins Co., LPA ("McDonald Hopkins") and ("Weiser"), including fees and expenses, approval of which will be sought by final fee application in accordance with the post-confirmation order, shall be paid as follows:

  (i) $100,000 at the closing on the Plan Funding; and

  (ii) The balance of McDonald Hopkins' and Weiser's approved fees and expenses shall be paid as follows: (a) three monthly installments of not less than $15,000 with the first installment payment due on April 1, 2005 and each of the next two installment payments due on May 1, 2005 and June 1, 2005, and (b) the balance of the approved fees and expenses of

McDonald Hopkins and Weiser shall be paid in full on or before July 1, 2005.

14. The payment of approved fees and expenses of Leech Tishman Fuscaldo & Lampl, LLC, ("LTFL"), including fees and expenses, approval of which will be sought by final fee application in accordance with the post-confirmation order, shall be paid as follows:

    (i) $100,000 at closing on the Plan Funding;

    (ii) The balance of LTFL's approved fees and expenses shall be made in monthly installments of not less than $15,000 with the first payment due on April 1, 2005 and each and every payment due thereafter on the first day of every month until the approved fees and expenses of LTFL are paid in full;

    (iii) LTFL shall receive a second lien position on (a) the Bonnie Drive Property and (b) the proceeds received from the adversary proceeding titled *International Staple & Machine Company v. Royal & Sun Alliance Insurance Agency, Inc.* filed by the Debtors at Adversary Proceeding No. 05-02252; and

    (iv) The balance of LTFL approved fees and expenses shall be paid no later than January 1, 2006.

15. Notwithstanding the provisions of F.R.B.P. No. 3020(e) this Order is not stayed and the Plan may be consummated prior to the expiration of ten days following the entry of this Order.

[SIGNATURE PAGE TO FOLLOW]

Dated: February 24, 2005

BY THE COURT:

/s/ M. Bruce McCullough
M. Bruce McCullough
United States Bankruptcy Judge

FILED

FEB 25 2005

CLERK, U.S. BANKRUPTCY COURT
WEST. DIST. OF PENNSYLVANIA